FILED ✓    LODGED ___
RECEIVED ___    COPY ___

JAN 27 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Samantha Finch
14561 W. Sierra Street
Surprise, Arizona 85379
(623) 340-6678

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samantha Finch, | ) |
|        Plaintiff, | ) |
| vs. | )    CV-17-00261-PHX-MHB |
| Mountain Park Health Center, a corporation | )  **INITIAL COMPLAINT** |
|        Defendant. | )  **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |
| | ) |
| | ) |

**Jurisdiction**

1.  This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to Title VII Civil Rights Act of 1964, Fair Labor Standards Act (FLSA), 45 CFR, and the laws of the State of Arizona.

2.  Pursuant to 28 U.S.C. §1367 – Supplemental jurisdiction, this court may also exercise jurisdiction over Plaintiff's state law claims arising under the common law and statues of the State of Arizona and which arise from a common nucleus of operative facts.

1

## Statement of Claim

3.  This case arises out of Defendant Mountain Park Health Center's ("MPHC") continuing violation of public policy to include alleging false material facts regarding the employment relationship between Plaintiff and Defendant, falsely accusing Plaintiff of the crime of misappropriation, making future threats to "bring claim" and "bring counterclaims" against Plaintiff (ARS§13-1804).

4.  On February 22, 2016 Defendant MPHC filed a fraudulent counterclaim alleging false material facts regarding a claim of breach of duty of loyalty/set –off. (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Page 22 – 26).

## Parties

5.  Plaintiff Samantha Finch pro se, resides in the state of Arizona, alleges that Defendant Mountain Park Health Center ("MPHC") carried out discriminatory and retaliatory acts against Plaintiff in violation of Title VII, FLSA, and Arizona state law.

6.  Plaintiff is an employee of Mountain Park Health Center within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e et seq., and applicable case law. (*Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997) (retaliation claims are actionable even if defendant no longer employs the plaintiff at the time of filing an EEOC Charge and at the time of alleged retaliation)

7.  Defendant Mountain Park Health Center is a corporation in the state of Arizona at the address 2702 N. 3rd Street, Suite 4020; Phoenix, Arizona 85004.

8.  At all relevant times, Defendant MPHC employed in excess of fifteen employees and is an employer within the meaning of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 200e, et seq and FLSA.

### Administrative Prerequisites

9. Plaintiff pro se has complied with all the administrative prerequisites under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 as follows:

   a. September 22, 2016, Plaintiff filed an amended charge of discrimination and retaliation with the EEOC, Charge Number 540-2016-02694 (Fourth Charge).

   b. October 31, 2016, Plaintiff received a Right to Sue Notice from the EEOC on Charge Number 540-2016-02694 (Fourth Charge).

### Preliminary Statement

10. Plaintiff is a Witness of Jehovah.

11. Plaintiff has over 25 years of work experience providing administrative support to midlevel and senior level executives.

12. Plaintiff complained of religious discrimination and retaliation during the course of her employment and post-employment. (Case 2:15-cv-01503-SRB, Document 37, Filed 02/15/16, Page 9 – 15:1 – 11)

13. Since April 2014, Plaintiff has opposed Defendant MPHC's continuing adverse employment acts, to include illegitimate job performance criteria, diminished compensation, transfer of job duties, diminished job capacity, demotion, disparate treatment policy based on illegitimate criteria of social participation at work, employer's request that Plaintiff commit an act of perjury, wrongful termination, being falsely accused of violating federal statue, being falsely accused of the crime of misappropriation, extortion, litigating a fraudulent lawsuit, and other acts in violation of public policy.

14. Defendant MPHC's manager, directors, and officers do not want to take responsibility for the adverse employment actions. (*See e.g. Gordon v. United Airlines, Inc.,* the employer's grounds for its adverse action are poorly defined, the grounds are inconsistently applied, the employee has denied the existence of the grounds, and no manager owns responsibility for the employment decision)

15. When asked to identify all officers, directors, managers, and agents who acted in good faith with respect to Plaintiff, Defendant MPCH answers that MPHC's investigation into Plaintiff's claims is ongoing and MPHC is continuing to develop its legal theories as discovery progresses. (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #4, served September 12, 2016)

16. When asked to identify all individuals involved with claiming Plaintiff may have falsified or inflated overtime hours, Defendants answer that all information is subject to attorney-client privilege, work product privilege, other privileges. (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #2, served September 12, 2016)

17. When asked to identify all other individuals who contributed to Plaintiff's annual performance evaluation, Defendants answer that the question is overly burdensome and intended to harass MPHC. (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #3, served September 12, 2016)

18. When asked to identify the "multiple senior managers" who provided negative feedback against Plaintiff, Defendants answer that the questions is overly burdensome and intended only to harass MPHC. (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #5, served September 12, 2016)

4

19. When asked to identify all others who were involved in Plaintiff's termination besides Troy Foster, HR Director, Defendant MPHC answers that the information "may be protected by the attorney-client privilege, work product privileges, or other privileges available to MPHC." (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #7, served September 12, 2016)

20. Defendant MPHC denied their proffered reason, "HIPAA breach violation" given to Plaintiff by Foster on March 25, 2015 when terminating her employment.

21. Defendant MPHC has denied their proffered reason "misappropriation" for filing their counterclaim against Plaintiff. (*See e.g. Gordon v. United Airlines, Inc.,* the employer's grounds for its adverse action are poorly defined, the grounds are inconsistently applied, the employee has denied the existence of the grounds, and no manager owns responsibility for the employment decision)

22. Defendant MPHC has provided no legitimate, non-discriminatory and non-retaliatory reason for each and every adverse employment act carried out against Plaintiff.

23. Defendants claim there were and are legitimate, non-discriminatory, and non-retaliatory reasons for "each and every employment practice or action taken by Defendants that is alleged to have adversely affected Plaintiff." (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Page 20:10 – 12)

24. When asked to identify their legitimate, non-discriminatory, and non-retaliatory reasons for each employment practice or action taken by Defendants against Plaintiff, Defendants answer that Defendant MPHC's investigation into Plaintiff's claims is ongoing and MPHC is continuing to develop its legal theories as discovery

5

progresses. (Defendant's Answer to Plaintiff's First Set of Non-Uniform Interrogatories #1, served September 12, 2016)

25. Defendant MPHC intentionally created a hostile work environment after Plaintiff complained of religious discrimination and retaliation.

26. Defendant MPHC created a disparate treatment policy in relations to Plaintiff's religious practice toward social participation at work.

27. Defendant MPHC created an impermissible criterion when rating Plaintiff's job performance on July 1, 2014 in Team Contribution section.

**Background**

28. On June 5, 2012, or thereabout, Defendant MPHC hired Plaintiff as an Administrative Assistant. (Case 2:15-cv-01503-SRB, Document 37, Filed 02/15/16, Page 5:10 – 11)

29. During her employment with Defendant MPHC, Plaintiff reported to Corporate Office Manager, Karen Carter. (Case 2:15-cv-01503-SRB, Document 37, Filed 02/15/16, Page 5:11-12)

30. Defendant MPHC assigned Plaintiff a laptop on or around June 5, 2012.

31. Plaintiff performed her job well.

32. When asked for a copy of all documents which evidences that Plaintiff did not perform her job well, Defendants respond "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of an not relevant to, the claims in this matter and (3) it is harassing." (#102– Defendants' Responses to Plaintiff's Fourth Request for Production, served September 9, 2016)

33. Pretext can be shown where the employer gives one reason at termination but then offers another later (and that one lacks documentation). *Chaney v. Plainfield Healthcare Center,* 612 F.3d 908 (7th Cir. 2010); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 407 (7th Cir. 2008);*O'Neal v. City of New Albany,* 293 F.3d 998 (7th Cir. 2002).

34. In Plaintiff's "3-Month Performance Evaluation" supervisor Carter reports "I could not ask for a better representative of Mountain Park or the administrative office. She is ALWAYS professional and courteous." (MPHC000290 – 000292)

35. June 2012 – July 2013 performance period, Plaintiff received a 4 rating of "above expectation".

36. June 2012 – July 2014 performance period, Ms. Carter told Plaintiff, that Plaintiff deserved a rating of five (5).

37. There had been no documented disciplinary or performance issues from the time Plaintiff was hired in June 2012 up to the point of April 21, 2014 when Plaintiff declined supervisor Carter's non-work lunch invitation.

38. On or around April 21, 2014, supervisor Carter emailed Plaintiff an invitation to a non-work related lunch. (Case 2:15-cv-01503-SRB, Document 37, Filed 02/15/16, Page 5:11-12)

39. Plaintiff declined supervisor Carter's lunch invitation.

40. Supervisor Carter complained to members of senior management team that Plaintiff declined to go to lunch with her like "everybody else."

41. On May 15, 2014, Plaintiff was told by a co-worker that supervisor Carter had complained to her subordinates who attended the lunch on April 29, 2014 or

7

thereabout, that Plaintiff "not a team player" because she did not attend the non-work related lunch "with everybody else".

42. On May 15, 2014, Plaintiff made a claim of religious discrimination to Rachel Lambert, Chief Operating Officer, and asked Lambert to address the matter with supervisor Carter.

43. On May 16, 2014 or thereabout, Ms. Lambert told Plaintiff she had addressed her concern of religious discrimination with supervisor Carter.

44. Ms. Lambert provided feedback on Plaintiff's job performance review.

45. Ms. Lambert oversees the Human Resources Department.

46. Troy Foster, HR Director, reports to Ms. Lambert.

47. On May 28, 2014, or thereabout, Ms. Lambert told Plaintiff regarding supervisor Carter, "She is the supervisor she can do whatever she wants."

48. On July 1, 2014, supervisor Carter gave Plaintiff a job performance rating of two (2) for less than effective in Team Contribution, stating in part, "I would encourage [you] to participate more as a team member when given the opportunity."

49. On July 1, 2014, Defendant MPHC created an illegitimate job performance criterion – social participation while at work, to support undeserved low job performance rating given Plaintiff in Team Contribution.

50. In 2013 or thereabout, Defendant MPHC deployed a new Employee Evaluation Tool for all employees, including managers and clinical workers.

51. Accepting lunch invitations from supervisor when given the opportunity is not a performance criterion written in the Team Contribution section of the performance

8

review template. (Case 2:15-cv-01503-SRB, Document 91, Filed 07/29/16, Page 8, ¶69).

52. Plaintiff complained of religious discrimination and retaliation after her July 1, 2014 annual review had been conducted by supervisor Carter, alleging undeserved low performance rating and undeserved negative comments in annual review. (MPHC000001 – MPHC00020)

53. Defendant MPHC has continued to carry out adverse employment acts against Plaintiff, including adverse acts post- employment. (Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 13:16 – 29, 14:1-29)

54. July 1, 2014, Defendant MPHC intentionally made a false statement in Plaintiff's annual review that Plaintiff was unwilling to help outside of her direct reporting structure. (MPHC000282; Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 3:21 -24; STF05-00133 - 00135)

55. Defendant MPHC threatened Plaintiff that low performance rating could justify terminating her employment. (MPHC000011, para. 1, lines 2 – 3)

56. Plaintiff's compensation was diminished as a result of undeserved low job performance ratings. (MPHC000011, para. 1, lines 4 – 5)

57. On August 13, 2014, supervisor Carter announced that Defendant MPHC's senior management team had authorized a "new EA structure" which changed the terms and condition of Plaintiff's employment.

58. The "new EA structure" was based on impermissible criteria in violation of public policy and in violation of Defendant MPHC's own written company policy. (Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 4 -5:1-11).

9

a.   On August 13, 2014, supervisor Carter announced that under the "new EA structure" all administrative assistants are required to accept lunch invitations from supervisor Carter. (STF05-00119, 00123 – 000130)

b.   August 13, 2014, supervisor Carter announced to her subordinates:   'We are a team and we have to do things as a team.   Senior leaders, they go to lunch together, they eat together every day and as their EAs we have to do things together.   This is the new structure.   If you feel this is not the place for you, I understand and we would go our separate ways, but this is how things will be.'

c.   Plaintiff was the only EA on the "Administrative Team" who declined, based on religious practice, to attend non-work related scheduled lunches.

d.   The social participation policy authorized by senior management team on August 13, 2014 or thereabout, under the new "EA pool structure" was in direct opposition to Plaintiff's religious practice toward social participation at work.

e.   MPHC's written company policy in effect at the time of the adverse employment acts discourages personal relationships between supervisors and subordinates.

f.   MPHC Employee Handbook states, "Supervisors are discouraged from becoming personally involved with any of their subordinates, as outlined in Mountain Park Health Center's Affirmative Action Plan. This type of relationship has the potential to undermine supervisor objective[t]y regarding all of his/her subordinates."

g.   The social participation policy authorized by senior management team on August 13, 2014 or thereabout, under the new "EA pool structure" violated Defendant Mountain Park Health Center's company policy.

59.   On August 13, 2014, under the "new EA structure", Defendant MPHC's senior management team authorized all job duties performed by Plaintiff be transferred to supervisor Carter.

a.   August 13, 2014 supervisor Carter expressly excluded Lan Smith, the only other EA on the "administrative team" from the transfer of job duties.

60.   Under the "new EA structure", Defendant MPHC demoted Plaintiff. (STF02-00001; STF05-00111 through 00122)

61.   Under the "new EA structure," Defendant MPHC diminished the job capacity of Plaintiff. (STF02-00001; STF05-00111 through 00122)

62.   August 27, 2014, Plaintiff submitted a grievance with Defendant Foster, HR Director and Privacy Officer.

63.   On August 28, 2014, Foster dismissed Plaintiff's "grievance on the merits, as unfounded. *See* HMR *5.22*.11" (MPHC000010 – MPHC000012, Page 2, para.4 – "conclusion")

64.   September 11, 2014, Plaintiff appealed the negative comments and low ratings in her annual review to John Swagert, CEO.

65.   September 16, 2014, John Swagert issued an appeal letter, stating "My review uncovers no additional information, and upon independent assessment, I agree with the findings outlined in MPHC's Response, dated August 28, 2014. Your grievance is dismissed on the merits."

66. Defendant MPHC failed to make accommodations for Plaintiff's religious practice.

67. Plaintiff was subjected to verbal abuse from supervisor Carter when Plaintiff declined another of her non-work related lunch invitations sent on August 27, 2014 or thereabout.

68. On August 27, 2014 supervisor Carter emailed Plaintiff another lunch invitation. (MPHC00003; STF05-00098)

69. On August 27, 2014, Plaintiff informed supervisor Carter that she would not be attending the lunch.

70. On August 27, 2014, supervisor Carter immediately raised her voice, started to hyperventilate, and began yelling at Plaintiff, becoming indignant, stating 'You are not getting out of this one! You are going! You are going! It's not optional. I am making it mandatory!'

71. August 28, 2014, in email, Plaintiff reported to Troy Foster the August 27, 2014 incident with supervisor Carter. (MPHC00008 – MPHC00009)

72. On September 11, 2014, in email, Plaintiff reported the August 27, 2014 incident with supervisor Carter to John Swagert. (MPHC000016)

73. September 26, 2014, Plaintiff requested in email to Troy Foster that she be provided the circumstances behind the negative comments and low performance ratings. (MPHC000013 – MPHC000014)

74. September 26, 2014 HR Director, responded in part, "I suggest working with Ms. Carter to ensure that you are meeting those expectations, seeking feedback for improvement on a regular basis and inquiring whether there have been concerns raised such that you can address them."

75. October 2, 2014, or thereabout, supervisor Carter sent Plaintiff another invite to lunch.

76. On October 2, 2014, Plaintiff again declined to attend the lunch scheduled by supervisor Carter. (STF05-00100 through 00101)

77. October 2, 2014, after Plaintiff declined supervisor Carter's lunch invitation, Defendant Carter complained to John Swagert, officer at MPHC and member of senior management team which authorized the new EA pool structure.

78. On December 23, 2014 or thereabout, Defendant Carter told Plaintiff that Plaintiff's religious practices as a Jehovah's Witness disturbs supervisor Carter internally because the religious practice of Jehovah's Witnesses are so different than her own. (Doc. 91, ¶¶28 – 41).

79. When asked to produce documents concerning the claim that MPHC made accommodations for Plaintiff's religious practice, Defendants respond that "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter and (3) this request is intended to harass." (#243 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

80. Plaintiff alleges MPHC took no action to address Plaintiff's complaints of religious discrimination or retaliation.

81. When asked to produce documents to support the claim that Defendants took action to address Plaintiff's complaint of religious discrimination and retaliation, Defendants respond, "(2) the request seeks documents that are not reasonably

13

calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass, and (4) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#244 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

82. Plaintiff exhausted Defendant Mountain Park Health Center's (MPHC) internal process regarding her Title VII and FLSA claims (Doc. 91,¶¶17 – 22, 35 – 36, 43-63, 110 – 111, 124 – 131, 135 – 205, 212 - 237).

83. On October 27, 2014 Plaintiff filed a charge of religious discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") (First Charge)

84. On November 25, 2014, the EEOC issued Plaintiff a Right to Sue letter on Charge No. 540-2015-00272 (First Charge). (EEOC1000001 – EEOC1000059)

85. Defendant MPHC subjected Plaintiff to harassment during the course of her employment.

86. During the time period of August 2014 or thereabout through March 25, 2015, Plaintiff increased the use of her personal time off.

87. On March10, 2015 or thereabout Plaintiff filed for FMLA claiming stressful work environment.

88. Defendant MPHC continued harassing Plaintiff post-employment.

89. On March 30, 2015, Plaintiff filed a charge of retaliation with the EEOC, Charge Number 540-2015-01603 (Second Charge).

14

90. May 18, 2015, Plaintiff received a Right to Sue Notice from the EEOC on Charge Number 540-2015-01603(Second Charge filed March 30, 2015).

91. On November 10, 2015, Plaintiff filed a charge of discrimination and retaliation with the EEOC, Charge Number 540-2016-00346 (Third Charge).

92. January 13, 2016, Plaintiff received a Right to Sue Notice from the EEOC on Charge Number 540-2016-00346 (Third Charge filed November 10, 2015).

93. Defendant MPHC threatened Plaintiff with court action post – employment.

94. Defendant MPHC filed a fraudulent counterclaim alleging breach of duty of loyalty/set-off.

### Statement of Facts

95. On May 9, 2016, in court Document 75, Plaintiff provided Defendants notice of her discovery of the documents which evidences discriminatory adverse treatment of Plaintiff in comparison to the treatment of Sarah Grant who committed a HIPAA breach violation.

96. In the email dated March 25, 2015 with subject: "Potential Breach", Defendant Carter reports to Defendant Foster, Adam Brady and Stella Xenakis,"Wanted to let you know I had a conversation with Sarah Grant this morning where she admitted that she had gone in her own eCW patient chart to look at some test results."

97. On April 9, 2015 in email, Foster defined the following act as a "HIPAA violation": "If you are an employee and patient of MPHC, you cannot access eCW to look at your own medical record."

98. On April 9, 2015, in email, Foster defined Sarah Grant's actions described by Carter to be a "HIPAA violation".

15

99. Defendants treated Plaintiff differently than Sarah Grant.

100. Defendant did not terminate Sarah Grant's employment for her actions defined by Foster to be "HIPAA violation".

101. On July 11, 2016, in Defendants' Response to Plaintiff's First Requests For Admission, Request for Admission #12, Defendants respond, "Defendants specifically object to the phrase "HIPAA Breach violation" as vague, ambiguous and not defined by Plaintiff. To the extent a response is required, Defendants responds that Ms. Grant did not violate HIPAA as did Plaintiff and, therefore did not terminate the employment of Ms. Grant."

102. On February 22, 2016, Defendants deny Mr. Foster told Plaintiff her employment was being terminated for HIPAA breach violation. (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Page 11,¶¶138, 140; *id* Document 91, Filed 07/29/16; Case 12:15-cv-01503-SRB, Document 205, Filed 01/19/17, Page 8)

103. On April 8, 2015, Foster sends an email to supervisor Carter, "Just checking in on the discipline for Sarah?"

104. April 8, 2015, Carter responds, "Completely forgot to write it up. I'll take care of it today."

105. April 8, 2015, Foster responds, "Cool no worries. I was just checking that off my list."

106. Defendants did not give Plaintiff the discipline Defendants gave to Sarah Grant who committed a "HIPAA violation" as defined by Foster in email dated April 9, 2015.

107. Defendant MPHC did not threaten to file "claims" and "counterclaims" against Sarah Grant.

16

108. When asked to provide documents concerning threats of "claims" and "counterclaims" which Defendants have made against any employee other than Plaintiff for an alleged company violation, Defendants respond "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass, and (4) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#158– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016) (see also #159)

109. Defendant MPHC did not file a claim of set-off against Sarah Grant.

110. When asked to produce documents concerning allegations of set-off Defendants have made against at-will employee, excluding Plaintiff, for violating company policy, Defendants respond that "(1) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, and (2) this request is intended to annoy and harass." (#188 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

111. Defendant MPHC did not make claims of monetary damages against Sarah Grant for her actual violation of HIPAA.

112. When asked to produce documents concerning claims for monetary damages which Defendants have made against any employee, other than Plaintiff, who has engaged in the incidents and conduct made the basis of Defendants' counterclaim, Defendants

17

respond, "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass…" (#193– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

## CLAIM I

### Disparate Treatment

113. Plaintiff re-alleges paragraphs ___ through ___.

114. By doing the acts described in paragraphs _____Defendant MPHC discriminated against Plaintiff in violation of Title VII Civil Rights Act which entitles Plaintiff to recover damages pursuant to Title VII Civil Rights Act.

115. By doing the acts described in paragraphs, ____ through ____, Defendants treated Plaintiff differently than Ms. Grant by terminating Plaintiff's employment and not the employment of Ms. Grant, in violation of Title VII Civil Rights Act which entitles Plaintiff to recover damages pursuant to Title VII Civil Rights Act.

116. By doing the acts described in paragraphs 335 through 387 Defendant did not believe the given reason of HIPAA breach violation for terminating Plaintiff's employment and therefore the given reason was pretext, a violation of Title VII Civil Rights Act which entitles Plaintiff to recover damages pursuant to Title VII Civil Rights Act.

117. By doing the acts described in paragraphs 16 – 20, 65 – 68, 70, 77 – 78, 96 – 97, 122 – 123, 138 – 179, 183 – 266, 270 – 292, 295 - 296 , 300 – 328, 335 – 387, 411 – 413 and 415 Defendants did not terminate Plaintiff's employment for legitimate non-discriminatory reasons.

**Statement of Facts**

118. On January 12, 2017, Defendant MPHC asserts, "Plaintiff is a former employee of MPHC. In 2015, MPHC terminated Plaintiff's employment after she disclosed confidential information to her attorney in violation of MPHC policy." (Case 2:15-cv-01503-SRB, Document 202, Filed 01/12/17, Page 2:18 – 20)

119. Breach of protected health information is governed by HIPAA not Defendant MPHC's company policy.

120. Federal Register Vol. 78, No. 17, Part II, pg. 5566, column 1, ¶2 – Compliance date: states, "Covered entities and business associates must comply with the applicable requirements of this final rule by September 23, 2013."

121. Defendant Mountain Park Health Center is a covered entity.

122. Defendant MPHC was required to comply with the HIPAA Omnibus Rule by September 23, 2013.

123. Defendant MPHC was not compliant with the HIPAA Omnibus Rule when it wrongfully terminated Plaintiff's employment on March 25, 2015.

124. Defendants claim Defendant's compliance with the HIPAA Omnibus Rule is not relevant to this lawsuit.

125. Defendants claim HIPAA Omnibus Rule is "outside the scope" of Plaintiff's lawsuit.

126. On July 11, 2016 in Defendants' Responses to Plaintiff's First Requests for Admission #15, Request for Admission #16, Request for Admission #17, Request for Admission #18, Request for Admission #19, Request for Admission #20, and Request for Admission #21, Defendants claim that "HIPAA Omnibus Rule" is "outside the scope of, and not relevant to, claims alleged in this Lawsuit."

127. Defendants deny HIPAA Enforcement Rule is codified at 45 CFR Part 160.

128. The following are some of the measures which HIPAA Omnibus Rule required Defendant MPHC to become complaint: (1) Revise HIPAA policies and procedures, including modifications to address response to potential breaching involving unsecured PHI; (2) update and redistribute Notices of Privacy Practices; (3) Train employees on updated obligations.

129. When asked to provide documents evidencing Defendant's compliance with the HIPAA Omnibus Rule before March 25,2015, Defendants respond that "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter." (#121 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

130. Defendants terminated Plaintiff's employment before providing her with the training required by 45 CFR 164.

131. By March 25, 2015, Defendant failed to provide Plaintiff with the training required by the Office for Civil Rights, Department of Health and Human Services, as outlined in Federal Register Vol. 78, No. 17, Part II, Department of Health and Human Services, pg. 5657, #7, Section 164.414 – Administrative Requirements and Burden of Proof, column 3 "Final Rule",

132. When asked to produce copy of workforce member training provided to Plaintiff as required by the Office for Civil Rights, Department of Health and Human Services as outlined in Federal Register Vol. 78, No. 17, Part II, Department of Health and Human Services, pg. 5657, #7, Section 16.414 – Administrative Requirements and

Burden of Proof, column 3 "Final Rule", Defendants respond, "(2) this request is overbroad, unduly burdensome, and seeks document wholly irrelevant to this lawsuit, and (3) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#4 – Defendants' Responses to Plaintiff's Fourth Request for Production, served September 9, 2016) (See also #5)

133. When an attorney is hired by an employer to conduct an investigation relating to allegations of discrimination/harassment, the attorneys' work is simply not subject to the attorney-client privilege. *Payton v. New Jersey Turnpike Authority*, 691 A.2d 321, 334 (N.J. 1997) ("If the attorney-client privilege were to apply broadly to any internal investigation of this type undertaken by an attorney, regardless of the pendency of litigation or the provision of legal advice, then all employers would commission attorneys as investigators, thus defeating the paramount public interest in eradicating discrimination . . .").

134. Defendants did not complete a Risk Assessment in accordance with 45 CFR 164 .402, Final HIPAA Omnibus Rule (78 Fed. Reg. 5641)

135. When asked to produce a copy of Defendants' Risk Assessment required by HIPAA Omnibus Rule, Defendants answer that the request "seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#131– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

136. When asked to produce a copy of documents regarding Risk Assessment conducted in accordance with 45 CFR 164.402, Final HIPAA Omnibus Rule (78 Fed. Reg.

5641), Defendant MPHC respond, "(2) this request is overbroad, unduly burdensome, and seeks documents wholly irrelevant to this lawsuit, and (3) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#3 – Defendants' Responses to Plaintiff's Fourth Request for Production, served September 9, 2016)

137. When asked to produce a copy of documents regarding the Risk analysis required by the Security Management Process standard in the Security Rule (45 C.F.R. 164.308(a)(1), Defendants respond "(2) this request is overbroad, unduly burdensome, and seeks documents wholly irrelevant to this lawsuit, and (3) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#2 – Defendants' Responses to Plaintiff's Fourth Request for Production, served September 9, 2016)

138. 45 CFR 164.400-414 requires notification following a breach of unsecured protected health information.

139. In the May 14, 2014 letter from Defendant MPHC, Defendants allege, "Ms. Finch breached HIPAA and has no defense."

140. On April 1, 2015, in a letter from Defendant MPHC to Plaintiff, Defendant MPHC presents that they are willing to "walkaway" from allegation of HIPAA breach if Plaintiff released Defendant MPHC from the claims of unpaid overtime, religious discrimination and retaliation.

141. In the May 14, 2015 in letter from Defendants, counsel reports to Plaintiff that, "At this time, MPHC is willing to entertain a potential walkaway agreement with mutual releases for all parties, including their attorneys."

142. Any covered entity or business who is willful negligent in a HIPAA breach will be in violation of 45 CFR 164 and 45 CFR 160 and subject to numerous civil money penalties- §160.401 Definitions

143. Federal Register/ Vol. 78, No. 17/ Friday, January 25, 2013/ Rules and Regulation, page 5566, section I(A)ii –*Summary of Major Provisions,* states in part "This omnibus final rule is comprised of the following four final rules:"

## CLAIM II

### Defendant MPHC Was Noncompliant with HIPAA Omnibus Rule

### When Terminated Plaintiff Employment Alleging HIPAA Breach Violation

144. Plaintiff re-alleges paragraphs 10 through 328.

145. By doing the acts described in paragraphs ___ Defendant MPHC showed pretext

### Statement of Facts

146. On January 28, 2015, in response to Plaintiff's letter dated December 18, 2014, Ogletree, Deakins, Nash, Smoak & Stewart P.C. sent Plaintiff a letter and announced, "We have completed our initial investigation of the claims asserted by Ms. Finch and MPHC offers the following response." (Case 2:15-cv-01503-SRB, Document 93, Filed 08/10/16, Page 14, para 1; *id* Doc. 91, ¶¶259, 300)

147. In the January 28, 2015 letter, Defendant MPHC assert a conclusion, among others, that:

> "Ms. Finch is properly classified as an exempt employee under the FLSA. Contrary to Ms. Finch's claim, Ms. Finch exercises independent judgment and discretion with respect to many significant matters on a daily basis. By way of example, Ms. Finch is primarily responsible for addressing and responding to patient complaints. This involves investigating the complaints, recommending a course of action, and directing and overseeing the resolution of the complaint with health center administration." (Case

23

2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 16; *id* Doc. 91, ¶263)

148. On January 28, 2015, Defendant MPHC asks Plaintiff to "sign an affidavit admitting facts relevant to her primary responsibilities as Executive Assistant to the COO". (Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 7)

149. On March 3, 2015, Plaintiff responded to Defendant MPHC's internal investigation and reports that she is unwilling to sign what she considers to be a false affidavit of facts regarding her job responsibilities.  (Case 2:15-cv-01503-SRB, Document 205, Filed 01/19/17; *id* Document 93, Filed 08/01/16, Page 9: 12 – 29, 10 – 11: 1 – 9; *id* Doc. 91, ¶¶268 - 269, 295; MPHC000021 - MPHC0000222)

150. On March 25, 2015, at approximately 10:45 AM, Troy Foster, HR Director and Privacy Manager, terminated Plaintiff's employment alleging Plaintiff committed a "HIPAA breach violation"(Case 2:15-cv-01503-SRB, Document 91,  Filed 07/29/16, ¶302)

151. By terminating Plaintiff's employment for reasons to pertaining to Plaintiff's refusal to commit an illegal act, Defendant MPHC committed a tort against and violated public policy and their own company policy. (Case 2:15-cv-01503-SRB, Document 205, Filed 01/19/17)

152. On March 25, 2015, approximately four (4) hours after terminating Plaintiff's employment for an alleged "HIPAA breach violation", Defendant emailed Plaintiff a letter through counsel, and accused Plaintiff of misappropriation. (EEOC3000031 – EEOC3000032, Page 1, Para. 2)

153. On May 14, 2015, in letter to Plaintiff through legal counsel, Defendant MPHC claim, "Ms. Finch conduct has caused MPHC thousands of dollars in attorney's fees

and costs to investigate and remediate the improper misappropriation and use of protected health information." (EEOC3000027 – EEOC3000028, Page 1, Para. 3)

154. On May 14, 2015, in letter to Plaintiff through legal counsel, Defendant MPHC assert that terminating Plaintiff's employment because of alleged violation of HIPAA and violation of company policy was fully justified, asserting:

> "Finally, Ms. Finch's new claim of retaliation is obviously meritless. In short, she violated HIPAA and violated company policy in taking protected health information without authorization. Her conduct in providing your office with this PHI was indefensible. Her resulting termination of employment was fully justified." (EEOC3000027,pg. 1, para 2, lines 5 – 8)

155. On August 5, 2015, Plaintiff filed her Title VII and FLSA claims in federal court.

156. On August 31, 2015 Defendants write to the court, "This case arises out of Plaintiff's employment at MPHC and her subsequent termination for misappropriation and disclosure of protected health information." (Case 2:15-cv-01503-DMF, Document 10, Filed 08/31/15, Page 2:2 – 4)

157. On September 31, 2015 in court Document 19 – Defendant's Reply In Support of Motion To Dismiss, Defendants write to the court, "Finally, Plaintiff argues that MPHC raised a new argument in the Motion to Dismiss: her alleged misappropriation of confidential patient information."

158. On September 12, 2016, in Defendant's Answers To Plaintiff's First Set of Non-Uniform Interrogatories, # 12, Defendants state, "Plaintiff had access to documents containing confidential patient information *through the course and scope of her duties at MPHC*." (emphasis added). (Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 11:24 – 29, 12:1 – 29)

25

159. On February 22, 2016, Defendant MPHC files a lawsuit against Plaintiff seeking to obtain damages from Plaintiff based on the facts arising directly out of her claim of retaliation. (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Pages 22 – 26)

160. July 29, 2016, Defendant MPHC alleges, "…Plaintiff misappropriated documents for her own benefit, resulting in damage to MPHC…" (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 8:26 – 27)

161. July 29, 2016, Defendant MPHC alleges, "Plaintiff's employment was terminated for taking documents containing protected health information in violation of company policy. Her conduct violated HIPAA requirements and caused MPHC to take remedial action. Accordingly, MPHC's counterclaim clearly alleges a claim upon which relief can be granted. (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16,Page 9:18 – 22)

162. On July 29, 2016, Defendant MPHC states, "Arising *directly* out of the allegations related to the retaliation claim, MPHC filed a counterclaim asserting that it suffered damages as result of Plaintiff's misconduct." (Doc. 92, 2:10 – 14)

163. July 29, 2016, Defendant MPHC alleges, "As for any shifting basis for termination, this is simply incorrect. Plaintiff's employment was terminated for taking documents containing protected health information in violation of company policy. Her conduct violated HIPAA requirements and caused MPHC to take remedial action. Accordingly, MPHC's counterclaim clearly alleges a claim upon which relief can be granted." (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 9:18 – 22)

164. On August 15, 2016, in court documents, Defendants deny they accused Plaintiff of the crime of misappropriation. (Case 2:15-cv-01503-SRB, Document 100, Filed 08/15/16, Page 1:24 – 26, Page 4:25 – 28, Page 5:1 – 8)

165. When asked to produce documents evidencing resultant damage to Defendant, Defendants respond that "(1) the request seeks documents that are subject to the attorney – client privilege…"(#129 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

166. On February 22, 2016, Defendant Mountain Park Health Center filed a false claim in federal court seeking to obtain from Plaintiff damages based on their false accusation that Plaintiff committed a crime of misappropriation.

167. Defendant MPHC has failed allege any claim of commercial damage.

168. Plaintiff did not engage in commercial competition against Defendant MPHC.

169. On March 3, 2014, Plaintiff engaged in a course of conduct subject to the control of Defendant MPHC. (Case 2:15-cv-01503-SRB, Document 205, Filed 01/19/17)

170. When asked how Plaintiff used "patient records to support her settlement demands against MPHC", Defendants answer that MPHC's investigation into Plaintiff's claims is ongoing and MPHC is continuing to develop its legal theories as discovery progresses." (Defendant's Answers to Plaintiff's First Set of Non-Uniform Interrogatories #11, served September 12, 2016)

171. When asked to provide factual basis of the claim that Plaintiff committed the crime of misappropriation, Defendants respond that "(1) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this

matter, (2) this request is intended to harass, and (3) it seeks documents that may be subject to the attorney – client privilege, work produce privilege or other privileges available to Defendants." (#156 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

172. When asked to provide the legal basis for the claim that Plaintiff committed the crime of misappropriation, Defendants respond that "(1) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (2) this request is intended to harass, and (3) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#157 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

173. Defendant MPHC has denied their proffered reason "misappropriation" for filing their counterclaim against Plaintiff. (Case 2:15-cv-01503-SRB, Document 102, Filed 08/22/16 Pages 10 – 12; id Document 100, Filed 08/15/16, Pages 1:23 – 26, 4:23 – 28, 5:1 – 8)

174. Employer pretext exists when the employer's grounds for its adverse action are poorly defined, the grounds are inconsistently applied, the employee has denied the existence of the grounds, and no manager owns responsibility for the employment decision. See e.g., Gordon v. United Airlines, Inc., 246 F.3d 878 (7th Cir. 2001) In addition, the sincerity of the employer's belief is undercut by the unreasonable of the belief; employers need not be taken at their word. Id.

175. Pretext can be shown where the employer gives one reason at termination but then offers another later (and that one lacks documentation). Chaney v. Plainfield Healthcare Center, 612 F.3d 908 (7th Cir. 2010); Fischer v. Avanade, Inc., 519 F.3d 393, 407 (7th Cir. 2008);O'Neal v. City of New Albany, 293 F.3d 998 (7th Cir. 2002).

## CLAIM III

### Filed a False Claim of Misappropriation

176. Plaintiff re-alleges paragraphs 262 – 308 and 335 – 415.

177. By doing the acts described in paragraphs _____ Defendants falsely accused Plaintiff of the crime of misappropriation, an adverse employment act in violation of Title VII Civil Rights Act thereby entitling Plaintiff to recover damages pursuant to Title VII Civil Rights Act.

178. By doing the acts described in paragraphs 409– 413, 415,  Defendants did not believe their given reason for terminating Plaintiff's employment, crime of misappropriation and therefore the accusation is false and pretext for terminating Plaintiff employment, a violation of Title VII Civil Rights Act entitling Plaintiff to recover damages pursuant to Title VII Civil Rights Act.

### Statement of Facts

179. Under ARS§13-1804 A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a future threat to "accuse anyone of a crime or bring criminal charges against anyone."

180. ARS§13-1804:  A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a future threat to "cause anyone to part with any property".

29

181. ARS§13-1804:  A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a future threat to "engage in other conduct constituting an offense."

182. Defendant MPHC accused Plaintiff of the crime of misappropriation.

183. In the state of Arizona misappropriation or embezzlement is a crime and is classified as theft under A.R.S. §13-1802.

184. On April 1, 2015, Defendant MPHC, in written communication sent via email and U.S. mail, threatened to "seek court intervention including a temporary restraining order" against Plaintiff.(EEOC3000029 – EEOC3000030, Page 2, Para. 4)

185. On April 1, 2015, Defendant MPHC informs Plaintiff that it "may be willing to consider a walkaway" from the claim of misappropriation and HIPAA breach violation if Plaintiff agrees to walk away from her claims of unpaid overtime, religious discrimination and retaliation, including attorney's fees.  (EEOC3000029 – EEOC3000030, Page 2, Para 3)

186. April 6, 2015, Plaintiff notified EEOC of "MPHC Threats and Intimidation" and claimed pretext.  (EEOC000038)

187. On May 14, 2015, Defendant MPHC, in written communication sent via email, threatened Plaintiff that "…MPHC ultimately may be forced to bring claims against Ms. Finch [sic]". (EEOC3000027  - EEOC3000028, Page 1, Para. 3)

188. On May 14, 2015, Defendant MPHC, in written communication sent via email, threatened Plaintiff that, "Certainly, if forced, MPHC will bring counterclaims for offset." (EEOC3000027 – EEOC3000028, Page 1, Para. 3)

189. On February 22, 2016, Defendant MPHC filed false counterclaim alleging set-off relationship between Defendant MPHC and Plaintiff. (Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 8:13 – 29,9:1 – 4; *id* Document 182, Filed 12/12/16; *id* Document 197, Filed 12/29/16; *id* Document 159, Filed 11/16/16; *id* Document 173, Filed 12/05/16)

190. On December 5, 2016, Defendant Mountain Park Health Center state, "Plaintiff and MPHC are not debtors, creditors, or trustees under the Bankruptcy Code; and there is no "debtor's bankruptcy estate" subject to claims". (Case 2:15-cv-01503SRB, Document 177, Filed 12/05/16 Page 5:6 – 8)

191. On May 14, 2015, Defendant MPHC informs Plaintiff that "At this time, MPHC is willing to entertain a potential walkaway agreement with mutual releases for all parties, including their attorneys." (EEOC3000027 – EEOC3000028, Page 1, Para. 4)

192. On February 8, 2016, during the Case Management Report, Defendant MPHC, through Defense counsel, threatened Plaintiff that Defendant MPHC will file "HIPAA counterclaim" against Plaintiff. (**Exhibit A** – Email dtd 02/09/16)

193. On February 15, 2016, Defendant threatens that "Defendants are contemplating filing an amended pleading to bring counterclaims against Plaintiff based upon her violation of the Health Insurance Portability and Accountability Act ("HIPAA") and MPHC policy by taking protected health information of numerous patients without authorization." (Case 2:15-cv-01503-SRB, Document 37, Filed 02/15/16, Page 8: 23 – 26)

194. HIPAA does not provide a right of action for HIPAA breach violation. The mere fact that a federal statute or regulation has been violated and someone harmed "does not automatically give rise to a private cause of action in favor of that person." (*Watts v. Lyon County Ambulance Service,* No. 5:12-CV-00060-TBR, 23 F.Supp.3d 792 (2014) (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979)

195. On May 14, 2015, in letter from Defendants, Defense counsel accuse "Ms. Finch's conduct has caused MPHC thousands of dollars in attorneys' fees and costs to investigate and remediate the improper misappropriation and use of protected health information."

196. July 29, 2016, Defendant MPHC alleges, "As for any shifting basis for termination, this is simply incorrect. Plaintiff's employment was terminated for taking documents containing protected health information in violation of company policy. Her conduct violated HIPAA requirements and caused MPHC to take remedial action. Accordingly, MPHC's counterclaim clearly alleges a claim upon which relief can be granted." (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 9:18 – 22)

197. July 29, 2016, Defendant MPHC argues, "Plaintiff's misconduct in taking such documents violated MPHC's Code of Conduct, ran afoul of HIPAA, and required MPHC to investigate and take remedial steps." (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 2:10 – 14)

198. On February 22, 2016 in court, Defendant MPHC deny the allegation that on "March 25, 2015, Troy Foster, HR Director and Privacy Manager alleged I[Plaintiff]

32

committed a "HIPAA Breach Violation". (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, ¶138)

199. On February 22, 2016 in court Document 40, ¶140 – Defendants deny their legal conclusion of "HIPAA Breach Violation".

200. When asked to produce documents, laws, regulation and industry standards which entitles Defendant MPHC to demand money from an employee for alleged HIPAA Breach Investigation, Defendants responds that"(1) the request seeks documents that are subject to the attorney – client privilege, (2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) it is disproportional to the needs of the case in light of the amount in controversy…" (#137– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016) (See also #138 through #141)

201. When asked to produce any reports, publication, or other documents evidencing any standards, laws, regulation or industry standards which Defendants contend entitles them to monetary damages against an employee for an alleged violation of company policy, Defendants respond "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass, (4) it seeks documents that may be subject to the attorney – client privilege, work produce privilege or other privileges available to Defendants, (5) is vague and ambiguous…" (#195 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

33

202. In the May 14, 2015 letter from Defendants, Defendants make future threat to "bring claims" against Plaintiff for "the improper misappropriation and use of protected health information."

203. In the May 14, 2015 letter from Defendants to Plaintiff, Defendants make future threat to "bring counterclaim for offset."

### CLAIM IV

### Extortion

204. Plaintiff re-alleges paragraphs ____ and _____

205. By doing the acts described in paragraphs _____

### Statement of Facts

206. On February 22, 2016, Defendant MPHC filed a counterclaim alleging breach of duty of loyalty.

207. To establish a duty of loyalty, there must first be a fiduciary duty. (Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 8)

208. Fiduciary duty must be one arising from an express or technical trust that was imposed before and without reference to the alleged wrongdoing that caused the debt. (*Lewis v. Scott (In re Lewis)* 97 F.3d 1182, 1185 (9th Cir. 1996). (In re Cantrell, 329, F.3d 1119, 1125 (9th Cir. 2003) (Case 2:15cv-01503-SRB, Document 93, Filed 08/01/16 Page 7:27 – 29, 8 – 9:1 – 11)

209. On December 5, 2016, Defendant Mountain Park Health Center admits that Plaintiff and Defendant MPHC are not trustees. (Case 2:15-cv-01503SRB, Document 177, Filed 12/05/16 Page 5:6 – 8)

210. Defendant MPHC admits that their claim that Plaintiff had a duty of loyalty was made after Plaintiff made claims of discrimination and retaliation against Defendant MHPHC.

211. On July 29, 2016, Defendant MPHC admits, "Arising *directly* out of the allegations related to the retaliation claim, MPHC filed a counterclaim asserting that it suffered damages as result of Plaintiff's misconduct." (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 2:10 – 14)

212. On July 29, 2016, Defendant MPHC writes to the court, "The duty of loyalty claim arises out of the same transaction as the basis for Plaintiff's retaliation claim. To the extent that the Court concludes duty of loyalty is not the best fit for this fact situation, MPHC is also informed and believes that off-set is appropriate as a counterclaim or affirmative defense where Plaintiff may have falsified or inflated hours and demanded that MPHC pay for overtime that did not, in fact, occur." (Case 2:15-cv-01503-SRB, Document 92, Filed 07/29/16, Page 6:25 – 28; *id* Document 93, Filed 08/01/16, Page 3:11 – 29, 12:1 – 23)

213. On November 8, 2016, Judge Susan R. Bolton alleges, "As noted above, Defendants' claim for breach of fiduciary duty arises out of Plaintiff's termination and is not related to her claim for overtime pay under the FLSA." (Case 2:15-cv-01503-SRB, Document 150, Filed 11/08/16, Page 4:24, 5:1 – 2)

214. **MPHC's counterclaim of breach of duty of loyalty/set-off is grounded in alleged HIPAA violation.**

215. Defendant MPHC acknowledges that HIPAA does not provide a private right of action. (Case 2:15 – cv – 01503- SRB, Document 92, Filed 07/29/16, Page 5:8 – 9)

216. Defendant MPHC hired Plaintiff as an administrative assistant. (Job Descriptions – Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 19 – 24)

217. Plaintiff was hired as an at-will employee.

218. Plaintiff was misclassified exempt employee.

219. Plaintiff was not an officer, director or a senior employee at Mountain Park Health Center.

220. When asked to provide documents which form the factual basis that Plaintiff had a position as an officer, director, or senior employee, Defendants respond "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, and (3) this request is intended to harass." (#165 - – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

221. Plaintiff did not have an employment contract with Defendant MPHC.

222. On February 22, 2016, in their counterclaim, Defendants allege, "Finch further owed a duty not to use information about patient affairs to leverage settlement demand against her employer." (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Page 24, ¶ 36)

223.

224. When asked to produce documents which form the factual basis of the claim that Plaintiff competed against Defendant MPHC in a business transaction, Defendant MPHC respond that , "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass, and (4) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants." (#172 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

225. When asked to produce documents which form the factual basis of the claim that Plaintiff engaged in business transactions on behalf of Mountain Park Health Center, Defendants respond that "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, and (3) this request is intended to harass." (#170 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

226. Confidentiality agreements are unenforceable.

227. Defendant MPHC deny accusing Plaintiff of the crime of misappropriation. (Case 2:15-cv-01503-SRB, Document 100, Filed 08/15/16; *id* Document 165, Filed 11/22/16, Page 15:7 – 29; *id* Document 102, filed 08/22/16, Page 10:5 – 29, 11 – 13:1 – 22)

228. Defendant MPHC did not have a non-competition agreement with Plaintiff.

229. There is no restrictive covenant between Plaintiff and Defendant MPHC.

37

230. Plaintiff did not solicit Defendant MPHC's customers or employees.

231. Plaintiff did not engage in business competition against Defendant while employed.

232. Plaintiff did not engage in business competition against Defendant post – employment.

233. Plaintiff did not solicit customers away from employer while employed with Defendant MPHC.

234. Plaintiff did not solicit customers away from Defendant MPHC post – employment.

235. Plaintiff did not engage in business competition against Defendant Mountain Park Health Center.

236. Plaintiff does not have a business which would be in competition with Defendant MPHC.

237. Plaintiff does not have a business which provide health and wellness services.

238. Plaintiff did not engage in preliminary competitive activities.

239. Plaintiff did not commence business as a rival of Defendant MPHC.

240. Plaintiff was employed as a non-officer employee.

241. Plaintiff was not properly classified as an exempt employee.

242. Plaintiff did not have independent discretion in the performance of her duties for employer. (STF05-0039 through 00053, 00106 through 00135; Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 9:12 – 29, 10 – 11)

243. Plaintiff did not perform managerial or supervisory responsibilities for Defendant MPHC operations.

## CLAIM V

### Filed False Claim of Breach of Duty of Loyalty

244. Plaintiff re-alleges paragraphs 262 – 308 and 335 – 415.

245. By doing the acts described in paragraphs 292, 390, 403 – 413, 415

### Statement of Facts

246. On February 22, 2014, Defendant MPHC filed a counterclaim alleging "setoff". (Case 2:15-cv-01503-SRB, Document 40, Filed 02/22/16, Page 24 – 25)

247. For there to be a right to set-off, there must be mutuality.

248. When asked to produce any reports, publication, or other documents evidencing any standards, laws, regulations, or industry standard which entitles Defendant MPHC to file their counterclaim of set-off in federal court, Defendant respond that "(2) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter, (3) this request is intended to harass, (4) it seeks documents that may be subject to the attorney – client privilege, work product privilege or other privileges available to Defendants, (5) is premature and would be unduly burdensome to satisfy at this early stage of the litigation." (#196– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

249. On December 5, 2016, Defendant Mountain Park Health Center state, "Plaintiff and MPHC are not debtors, creditors, or trustees under the Bankruptcy Code; and there is no "debtor's bankruptcy estate" subject to claims". (Case 2:15-cv-01503SRB, Document 177, Filed 12/05/16 Page 5:6 – 8)

250. Plaintiff did not have a business contract with Defendant MPHC.

251. MPHC and Plaintiff and MPHC do not have a mutuality of debtor, creditor relationship. For there to be fiduciary duty, there must be a "trust".

252. Defendant MPHC failed to provide any material fact to the district court to alleging a fiduciary duty exist between Defendant MPHC and Plaintiff. (Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 8)

253. Defendant MPHC failed to provide proof of jurisdiction of their claim of breach of duty of loyalty. (Case 2:15-cv-01503-SRB, Document 93, Filed 08/01/16, Page 7:27 – 29, 8 – 11;*id* Document 197, Filed 12/29/16; *id* Document 165, Filed 11/22/16, Pages 1 – 9; *id* Document 59, Filed 03/18/16; *id* Document 159, Filed 11/16/16; *id* Document 182, Filed 12/12/16;*id* Document 173, Filed 12/05/16)

### CLAIM VI

### Filed False Claim of Breach of Set-Off

254. Plaintiff re-alleges paragraphs _____through _____

255. By doing the acts described in paragraphs ____,____, ____

### Statement of Facts

256. On November 18, 2016 in Order (Doc.150) Judge Susan R. Bolton states, "Defendants' counterclaim seeks damages incurred by Plaintiff's violation of MPHC's code of conduct by disclosing HIPAA – protected patient information." (Doc. 150, 4:7 – 9)

257. Company policy is not and law and therefore, is unenforceable.

258. Company policy which violates public policy is unenforceable.

259. Confidentiality agreements are unenforceable.

40

260. Defendant MPHC violated their own company policy.

261. Defendants have deliberately withheld from Plaintiff workplace policies in effect at the time of the adverse acts including and, as of the date of this filing, have not provided Plaintiff with the "employee handbook" or the "grievance" policy nor have they removed from production policies not in effect at the time of the adverse employment action. (Case 2:15-cv-01503-SRB, Document 116, Filed 10/03/16, Page 11:10 -16)

262. On May 24, 2016, or thereabout, Defendant MPHC denied the existence of its Employee Handbook. (Case 2:15-cv-01503-SRB, Document 116, Filed 10/03/16, Page 27 -33)

263. On May 24, 2016, or thereabout, Defendant MPHC denied the existence of grievance policy (HMR 5.22.11). (Case 2:15-cv-01503-SRB, Document 116, Filed 10/03/16, Page 27 -33)

264. On August 28, 2014, Troy Foster, signed an internal investigation letter titled, "Response to Grievance (HMR 5.22.11)"

265. On September 16, 2014, John Swagert, CEO, signed an appeal investigation letter titled "Appeal Investigation – Samantha Finch Response to Grievance (HMR 5.22.11)"

266. Defendant MPHC authorized impermissible job performance criteria to support low job performance ratings in Plaintiff's annual evaluation conducted on July 1, 2014.(Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Pages 2:22 – 29, 3-5:1-11)

267. On July 1, 2014, Defendant MPHC's senior management team created and authorized a social participation policy which conflicted with Plaintiff's social participation at work based on her religious practice. (Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, Page 2:22 – 29, 3 – 5:1 – 11)

268. On July 1, 2014, MPHC identified participation "as a team member when given the opportunity" as a job performance competency in the Team Contribution section of Plaintiff's July 1, 2014 annual review. (Doc. 91, 67)

269. The low rating of 2 for "less than effective" in the Team Contribution section of the annual review is supported by religious biased statement related to Plaintiff's social participation at work.

270. Accepting lunch invitations from supervisor when given the opportunity is not a performance criteria written in the Team Contribution section of the performance review template.

271. Defendants did not inform Plaintiff, since the time of hire, that her job performance would be rated on whether or not she went to lunch with her supervisor when given the opportunity.

272. MPHC Conflict of Interest Policy states

"Supervisors are discouraged from becoming personally involved with any of their subordinates, as outlined in Mountain Park Health Center's Affirmative Action Plan. This type of relationship has the potential to undermine supervisor objective[t]y regarding all of his/her subordinates. [...]"(Case 2:15-cv-01503-SRB, Document 59, Filed 03/18/16, 2:12 – 19, 3 - oc. 59, 2:1 – 19)

273. The social participation policy authorized by senior management team on August 13, 2014 or thereabout, under the new "EA pool structure" was in direct opposition to Plaintiff's religious practice toward social participation at work.(Doc. 91, 145)

42

274. In counsel's January 28, 2015 "initial investigation of the claims asserted by Ms. Finch", MPHC admitted to being aware of Plaintiff's religious beliefs in July 2014 before senior management team authorized the new "EA pool structure" on August 13, 2014. (Doc. 91, 146)

275. On August 13, 2014, supervisor Carter held an "Administrative Team Update" meeting attended by Plaintiff and Lan Smith and supervisor Carter. (Doc. 91, 139)

276. On August 13, 2014, supervisor Carter announced "senior management team" had authorized the new "EA pool structure" or "EA pool".

277. On August 13, 2014, under the new "EA pool structure", Defendant MPHC authorized a policy that subjected Plaintiff to disparate treatment. (Doc. 91, 140)

278. On August 13, 2014, under the new "EA pool structure", supervisor Carter notified those in attendance at the "Administrative Team Update" meeting of the new term and condition of employment, employment requirement for her subordinates: 'We are a team and we have to do things as a team. Senior leaders, they go to lunch together, they eat together every day and as their EAs we have to do things together. This is the new structure. If you feel this is not the place for you, I understand and we would go our separate ways, but this is how things will be.' (Doc. 91, 142)

279. On August 13, 2014, under the new "EA pool structure" supervisor Carter announced that senior management team had established a requirement for Carter's subordinates to accept lunch invitations scheduled by supervisor Carter. (Doc. 91, 143)

43

280. Plaintiff was the only EA on the "Administrative Team" who declined to attend non-work related scheduled lunches. (Doc. 91, 144)

281. MPHC's written company policy in effect at the time Plaintiff was hired until the time of her termination discourages personal relationships between supervisors and subordinates.

282. Plaintiff was hired by MPHC in June 2012.

283. Plaintiff's first employee evaluation was conducted June 2013 or thereabout.

284. Around April 2014, Plaintiff declined supervisor Carter's lunch invitation. Around April 2014 and again in May 2014, Plaintiff complained of religious discrimination and retaliation (Doc. 91, ¶¶42 – 70)

285. On July 1, 2014, MPHC identified participation "as a team member when given the opportunity" as a job performance competency in the Team Contribution section of Plaintiff's July 1, 2014 annual review (Doc. 91, ¶67) and rated Plaintiff a two (2) for "less than effective" in the Team Contribution section of the annual review, supported by religious biased statement related to Plaintiff's social participation at work (Doc. 91, ¶¶65 – 70).

286. July 2014, or thereabout, Plaintiff's compensation was also diminished due to the undeserved low job performance rating. (Doc. 91, ¶¶169 – 170)

287. In July 2014, Plaintiff complained that the low performance ratings were undeserved. (Doc. 91, 121 – 131)

288. On August 13, 2014, or thereabout, Plaintiff 's job duties were transferred to supervisor Carter, her job capacity was diminished, and was demoted.

289. When asked for a copy of company policy that identifies social participation with supervisor as a job performance criteria, Defendant MPHC responds that "(1) the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents outside the scope of, and not relevant to, the claims in this matter and (2) this request is intended to harass." (#254 – Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

290. When asked for a copy of company policy requiring an employee to participate in social activities with supervisor, Defendants respond, "this request seeks documents that are outside the scope of, and not relevant to, the claims in this matter and is intended to harass." (#255– Defendants' Responses to Plaintiff's Third Request for Production, served August 8, 2016)

291. On January 28, 2015 or thereabout Defendant MPHC company policy ADM 1.04 Code of Conduct, when Defendant MPHC asked Plaintiff to sign affidavit admitting true false facts relevant to her job duties.

292. Defendant MPHC violated public policy and company policy when it carried out adverse employment acts against Plaintiff for impermissible reasons.

## CLAIM VII

### Misrepresented and Violated Company Policy

### To  Carry Out Adverse Employment Acts

293. Plaintiff re-alleges paragraphs 262 – 308 and 335 – 415.

294. By doing the acts described in paragraphs 292, 390, 403 – 413, 415

**Request for Relief**

295.  Compensatory damages

296.  All lost wages and benefits past and future

297.  Punitive damages

298.  Any further relief which the court may deem appropriate

January 27, 2017

Samantha Finch
14561 W. Sierra Street
Surprise, Arizona 85379
(623) 340-6678

46